UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IVAN A. SMITH,

          Plaintiff,

    v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

          Defendant.

Case No. 16-cv-03934-SI

**ORDER REVERSING AND
REMANDING CASE FOR FURTHER
ADMINISTRATIVE PROCEEDINGS**

Re: Dkt. Nos. 13, 16

Now before the Court is plaintiff's appeal following the denial of Supplemental Security Income ("SSI") benefits by the administrative law judge ("ALJ"). Docket No. 13. The Commissioner of Social Security has filed a cross-motion to affirm the denial of SSI. Docket No. 16. For the reasons stated below, the Court REVERSES the denial of SSI and REMANDS this case pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

## BACKGROUND

### I.    Administrative Proceedings

On July 23, 2012, plaintiff Ivan Anthony Smith filed an application for SSI benefits under Title XVI of the Social Security Act, alleging mental illness, high blood pressure, and lower back pain. Administrative Record ("AR") at 65, 246. He stated in his application that he became disabled on July 1, 2012.[2] *Id.* at 65, 207, 246. His claim was denied initially and upon

---

[1] Nancy A. Berryhill, Acting Commissioner of Social Security, is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

[2] The ALJ decision lists the alleged disability onset date as January 1, 2010. AR at 40. As

reconsideration.  *Id.* at 94, 100.  On June 25, 2013, plaintiff filed a written request for a hearing.  *Id.* at 105.  On October 22, 2014, ALJ Philip E. Callis conducted a hearing at which plaintiff failed to appear.  *Id.* at 40.  Plaintiff was represented at the hearing by counsel.  *Id.*  The hearing primarily consisted of vocational expert testimony.  *See id.* at 56-62.  On October 22, 2014, the ALJ issued a notice to plaintiff to show cause for failing to appear.  *Id.* at 205-06.  Plaintiff did not respond to the notice.  *Id.* at 40.  On February 26, 2015, ALJ Callis denied plaintiff's application, finding plaintiff was not disabled within the meaning of the Social Security Act since July 23, 2012, the date plaintiff filed his application for benefits.  *Id.*

ALJ Callis's decision became the Commissioner's final decision when the Appeals Council denied review on May 17, 2016.  *Id.* at 1.  In denying review, the Appeals Council considered medical records that plaintiff submitted from Dr. Lesleigh Franklin and from the Native American Health Center.  *Id.* at 2.  The Appeals Council found that these records did not affect the ALJ's disability decision because they were "about a later time[,]" after the ALJ issued his decision on February 26, 2015.  *Id.*; *see also* Docket No. 13, Pl.'s Mot. at 6.  The Appeals Council also considered additional medical records plaintiff submitted from Eastmont Wellness Center, Highland Hospital, and Sutter Medical Alta Bates Summit.  AR at 2, 7.  The Appeals Council made this additional evidence part of the record but ultimately found that the evidence did not provide a basis for overturning the ALJ's decision.  *Id.* at 2.

On July 13, 2016, plaintiff commenced this action to seek judicial review pursuant to 42 U.S.C. sections 405(g) and 1383(c) on the ground that the ALJ erred in denying SSI.  Docket No. 1.  On November 18, 2016, plaintiff filed a motion for summary judgment.  Docket No. 13.  The Commissioner filed a cross-motion for summary judgment and an opposition to plaintiff's motion on January 30, 2017.  Docket No. 16.  After the parties stipulated to an extension of time, plaintiff filed a reply brief on March 13, 2017.  Docket No. 19.

---

defendant points out, this discrepancy does not impact the date at which plaintiff becomes eligible for benefits, as that is governed by the date on which he filed his application.  *See* 20 C.F.R. § 416.335; Docket No. 16, Def.'s Cross-Mot. at 1 n.2.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## II.      Medical and Vocational Evidence

At the time of the administrative hearing, plaintiff was a 47-year-old man with at least some high school education.[3]  *See* AR at 46; Pl.'s Mot. at 7 n.1.  The record contained the medical opinions of four medical professionals who evaluated plaintiff's mental and physical health.  Eugene McMillan, M.D., and C. Arpaci, Psy.D., performed in-person internal medicine and psychological consultative examinations, respectively.  Charles Fina, M.D., and Paul Klein, Psy.D., conducted physical and mental residual functional capacity assessments, respectively, based on reviews of plaintiff's medical records.

On October 22, 2012, Dr. McMillan primarily evaluated plaintiff for hypertension and back problems.  AR at 332.  Dr. McMillan's exam resulted in an impression of untreated hypertension and low back pain.  *Id.* at 334.  Regarding plaintiff's functional capacity, Dr. McMillan found that plaintiff could lift and carry 25 pounds regularly and could lift and carry 50 pounds occasionally.  *Id.* at 335.  Dr. McMillan found that plaintiff could stand or walk for six hours during an eight-hour workday and that plaintiff could sit for up to eight hours each day.  *Id.*

On October 24, 2012, Dr. Arpaci performed a Complete Mental Status Evaluation.  *Id.* at 336.  All of the information used for the evaluation was obtained from the plaintiff.  *Id.*  Dr. Arpaci reported a "[g]uarded" prognosis, explaining that medical records and a full test battery would be helpful to better understand and corroborate plaintiff's cognitive condition.  *Id.* at 340.  Based on the clinical interview, Dr. Arpaci reached the following conclusions: that plaintiff had a mildly/moderately impaired ability to follow simple instructions; a moderately impaired ability to perform one-to-two step tasks; a moderately/severely impaired ability to maintain concentration, adapt to changes in job routine, withstand the stress of a routine workday, and adapt to changes, hazards and stressors in the workplace; and a severely impaired ability to follow complex instructions, perform complex tasks, and interact appropriately with the public, co-workers, or supervisors on a regular basis.  *Id.* at 341.

---

[3] The ALJ found that plaintiff had at least a high school education, and there is evidence in the record to support this.  *See* AR at 46, 250.  In his motion, however, plaintiff states that he did not graduate from high school.  Pl.'s Mot. at 7 (citing AR at 338; Ex. A at 3).  Plaintiff does not argue that this discrepancy created reversible error.

1        Dr. Klein completed a Mental Residual Functional Capacity Assessment in April 2013. *Id.*

2   at 86, 88-90.  The Assessment consisted of a review of plaintiff's medical records. *Id.* at 81-86.

3   After reviewing plaintiff's medical records, Dr. Klein concluded that plaintiff's statements about

4   his symptoms are "partially credible," but he ultimately found that "no convincing evidence"

5   supported plaintiff's claims about the intensity, persistence, and limiting effects of the symptoms.

6   *Id.* at 85.  Specifically, Dr. Klein found plaintiff was not significantly limited in his ability to

7   maintain regular attendance and perform activities within a schedule. *Id.*  Dr. Klein found plaintiff

8   had a moderately limited ability to maintain concentration and attention for extended periods. *Id*.

9   at 89.  Dr. Klein found plaintiff was not significantly limited in his ability to carry out very short

10  and simple instructions and had a moderately limited ability to carry out detailed instructions. *Id*.

11  Dr. Klein found plaintiff had a moderately limited ability to respond to changes in the work

12  setting. *Id*. at 90.

13        Dr. Fina completed a Physical Residual Functional Capacity Assessment also in April

14  2013. *Id.* at 87-88.  Based on his review of plaintiff's medical records, Dr. Fina found that

15  plaintiff was not disabled. *Id.* at 92.  Specifically, Dr. Fina found that plaintiff was capable of

16  regularly lifting and carrying 25 pounds and occasionally capable of lifting and carry 50 pounds.

17  *Id*. at 87.  Dr. Fina found that plaintiff could stand or walk for six hours in an eight-hour workday

18  and could sit for six hours in an eight-hour workday. *Id*. at 88.  Dr. Fina also found that plaintiff

19  had no postural limitations, no manipulative limitations, no visual limitations, no communicative

20  limitations, and no environmental limitations. *Id*.

21        In addition to the four medical opinions, plaintiff also submitted additional evidence to the

22  Appeals Council consisting of medical records from Eastmont Wellness Center, Highland

23  Hospital, and Sutter Medical Alta Bates Summit. *Id*. at 7.  The Eastmont Wellness Center records

24  span November 13, 2012 to August 13, 2014.  They largely consist of notes and assessments from

25  plaintiff's appointments with Eastmont Wellness Center's nurses and doctors. *Id*. at 366-435.

26  Plaintiff sought care at various times for various conditions, including hypertension, back pain,

27  and depression. *See, e.g., id.* at 371.

28        The Highland Hospital records detail emergency care that plaintiff received from May 31,

4

2013, to February 27, 2015, for ear pain, ear wax build up, a fractured ankle, and a fractured fibula.  *Id*. at 442, 450, 453, 459.  The records indicate plaintiff traveled to Highland Hospital by foot, bus, and car.  *Id*. at 439 (walking), 446 (walking), 450 (bus), 465 (walking), 470 (car).  The records do not report on plaintiff's back pain or hypertension and show that plaintiff reported stable mental health.  *See id*. at 466 (reporting no depression and no thoughts of self-harm on September 4, 2013), 476 (reporting no depression and no thoughts of self-harm on May 31, 2013).

Between January 31, 2014, and February 28, 2015, plaintiff attended Alta Bates Summit four times for emergency medical treatment.  On January 31, 2014, the records indicate plaintiff received treatment for back, knee, and facial pain resulting from a car accident.  *Id*. at 492. Plaintiff twice received treatment for eye irritation and inflammation.  *Id*. at 502 (May 5, 2014), 511 (August 30, 2014).  On February 28, 2015, plaintiff received treatment for ear wax build up. *Id*. at 519.  The records indicate that each time plaintiff attended Alta Bates Summit for treatment the treating physician reported his or her impression that plaintiff had normal orientation, normal mood, normal affect, and normal judgment.  *Id*. at 494, 504, 512-13, 521.

## LEGAL STANDARD

### I.      Standard of Review

The Social Security Act authorizes judicial review of final decisions made by the Commissioner.  42 U.S.C. § 405(g).  Here, the decision of the ALJ stands as the final decision of the Commissioner because the Appeals Council declined review.  20 C.F.R. § 416.1481.  The Court may enter a judgment affirming, modifying or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing.  42 U.S.C. § 405(g).

Factual findings of the Commissioner are conclusive if supported by substantial evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2001).  The Court may set aside the Commissioner's final decision when that decision is based on legal error or where the findings of fact are not supported by substantial evidence in the record taken as a whole.  *Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999).  Substantial evidence is "more than a mere scintilla but less than a preponderance."  *Id.* at 1098.  Substantial evidence means "such relevant

United States District Court
Northern District of California

evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1110 (2012) (internal quotations omitted). To determine whether substantial evidence exists, the Court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Commissioner's conclusion. *Tackett*, 180 F.3d at 1098. "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## II.      The Five-Step Disability Inquiry

A claimant is "disabled" under the Social Security Act if: (1) the claimant "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A)-(B). The ALJ evaluates disability cases using a five-step evaluation process established by the Social Security Administration. 20 C.F.R. § 416.920; *Ludwig v. Astrue*, 681 F.3d 1047, 1048 n.1 (9th Cir. 2012).

In the first step, the claimant must establish that he or she is not engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). Substantial gainful activity is any work that involves significant mental or physical activities. *Id.* § 416.972(a). If the ALJ finds that the claimant has engaged in substantial gainful activity, the claimant is not disabled; however, if the ALJ finds that the claimant has not done so, the ALJ will proceed to step two.

In the second step, the ALJ must determine whether the claimant has an impairment or combination of impairments that is preventing him or her from performing substantial gainful activity. *Id.* § 416.920(a)(4)(ii). In order for an impairment to be severe, it must significantly limit an individual's ability to perform basic work activities. An impairment must have lasted or be expected to last twelve months in order to be considered severe. *Id.* § 416.909. If the ALJ does not find the claimant's impairment or combination of impairments to be severe at this stage, the

United States District Court
Northern District of California

6

claimant is not disabled.  If the ALJ determines that the claimant's impairment or combination of impairments is severe, the ALJ will proceed to step three.

In the third step, the claimant must establish that his or her impairment meets or equals an impairment included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 416.920(a)(4)(iii).  The claimant is disabled if his or her impairment meets or medically equals the criteria of a listed impairment.  *Garrison v. Colvin*, 759 F.3d 995, 1010-11 (9th Cir. 2014).  If the claimant's impairment does not meet or equal the criteria of a Listing, the evaluation continues.  20 C.F.R. § 404.1520(a)(4)(iii)-(iv).

Before reaching the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC").  *Id.* § 416.920(e).  The RFC measures the claimant's ability to meet the physical, mental, sensory, and other requirements of work despite his or her limitations.  *Id.* § 416.945(a)(4).  To determine the RFC, the ALJ considers the impact of the claimant's symptoms on his or her ability to work.  The ALJ will evaluate all the claimant's symptoms and the extent to which these symptoms are consistent with evidence in the record.  *Id.* § 416.929(a).  The evidence can include the claimant's own statements about his or her symptoms, but such statements must be adequately supported by the record in order to establish a disability.  *Id.*  In order to determine whether the claimant's statements are adequately supported, the ALJ must first determine whether the claimant has a medical impairment that could reasonably be expected to produce his or her symptoms, and then must evaluate the intensity and persistence of the claimant's symptoms.  *Id.* When evaluating intensity and persistence, the ALJ must consider all of the available evidence, including the claimant's medical history, objective medical evidence, and statements about how the claimant's symptoms affect him or her.  *Id.*  The ALJ cannot reject statements about the intensity and persistence of symptoms solely because no objective medical evidence substantiates the statements.  *Id.* § 416.929(c)(2).  The ALJ must also consider factors relevant to the claimant's symptoms, such as the claimant's daily activities, the claimant's medications and treatment, any other measures the claimant uses to alleviate symptoms, precipitating and aggravating factors, and any other factors relevant to the claimant's limited capacity for work due to his or her symptoms. *Id.* § 416.929(c)(3)(i)-(vi).

United States District Court
Northern District of California

1    At the fourth step, the ALJ must determine whether, in light of the claimant's RFC, he or

2    she can perform previous work.  *Id.* § 416.920(e).  If the ALJ determines that the claimant has

3    such capacity, the claimant is not disabled.  If the claimant cannot perform past relevant work or

4    has no past relevant work, the ALJ proceeds to the fifth step.

5    The burden of proof is on the claimant in the first four steps; if he or she fails to meet the

6    burden in steps one, two, three, or four, the claimant is "not disabled."  *Bray v. Comm'r of Soc.*

7    *Sec. Admin.*, 554. F.3d 1219, 1222 (9th Cir. 2009).  The burden shifts to the Commissioner in step

8    five.  *Id.* (citing *Tackett*, 180 F.3d at 1099).  In the fifth step, the ALJ considers the claimant's

9    RFC, age, education, and work experience to determine whether the claimant is able to do any

10   other work, and also must determine whether there are a significant number of these jobs in the

11   national economy.   20 C.F.R. § 416.920(a)(4)(v); *Garrison*, 759 F.3d at 1011.   If the

12   Commissioner fails to establish that there is a sufficient number of jobs available that the claimant

13   can perform, the claimant is "disabled."  *Id.*  If the Commissioner shows that the claimant can

14   make an adjustment to other work in the national economy, the claimant is not disabled.   20

15   C.F.R. § 416.920(a)(4)(v).

16

17                                      **ALJ'S DECISION**

18   In determining plaintiff Smith was not disabled within the meaning of the Social Security

19   Act,  the ALJ applied the five-step disability analysis described at 20 C.F.R. § 416.920(a)(4).  AR

20   at 40-41.  At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since

21   the date of his SSI application on July 23, 2012.  *Id.* at 42.  At step two, the ALJ determined that

22   plaintiff had four severe impairments: low back strain, untreated hypertension, mood disorder, and

23   cocaine abuse in reported sustained full remission.   *Id.*   The ALJ found that plaintiff's right

24   metatarsal fracture from July 2010 was not a severe impairment.  *Id.*  At step three, the ALJ found

25   that plaintiff's impairments did not meet or equal the severity of any impairment in the Listing of

26   Impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 42-43.  In particular,

27   the ALJ considered whether the "paragraph B" or "paragraph C" criteria were satisfied.  *Id.* at 42-

28   44.

United States District Court
Northern District of California

Before beginning steps four and five, the ALJ determined plaintiff's residual functional capacity. *Id*. at 44. The ALJ found that plaintiff had a residual functional capacity for medium work, limited to simple tasks in a work setting with low co-worker contact and no public interaction. *Id*. This finding was based on the ALJ's determination that although the record supported plaintiff's claims of underlying physical and mental impairment, the objective medical evidence did not substantiate plaintiff's claims as to the intensity, persistence, or functionally limiting effects of these impairments. *Id*. at 44-45. In reaching this conclusion, the ALJ discredited the statements of plaintiff and his mother as uncorroborated by the record. *Id.* at 45. The ALJ noted that the record contained "very sparse evidence of treatment" for lower back pain and hypertension and no evidence of treatment for depression. *Id.*

The ALJ also considered four medical evaluations. *Id*. at 45-46. Specifically, the ALJ considered the opinions of the DDS medical consultants, Dr. Klein and Dr. Fina. *Id.* Each determined that plaintiff could perform medium work and was capable of learning new simple 1-2 step tasks. *Id.* at 45-46 (citing AR 87-90). The ALJ held, "To the extent that it is consistent with this decision, I give their opinion great weight because it is well supported by the record as a whole." *Id.* at 46. The ALJ also assigned "great weight" to the medical opinion of Dr. McMillan "to the extent that it is consistent with this decision." *Id.* Dr. McMillan examined plaintiff and found him able to perform medium work. *Id.* The ALJ assigned "some weight" to the opinion of Dr. Arpaci "[t]o the extent that it is consistent with this decision . . . ." *Id.* Dr. Arpaci had found plaintiff moderately to severely impaired with respect to a number of "work-related abilities." *Id*. at 46, 341.

Omitting step four because plaintiff had no relevant work history, the ALJ continued to step five. *Id*. at 46. At step five, the ALJ considered whether jobs that plaintiff could perform existed in the national economy. *Id*. Because the plaintiff was 45 when he applied for disability benefits, the ALJ found that he was a "younger individual" under SSA regulations. *Id*. (citing 20 C.F.R. § 416.963). The ALJ found that plaintiff had a high school education and can communicate in English. *Id*. The ALJ did not need to evaluate transferability of job skills due to plaintiff's lack of past relevant work. *Id*. Relying on the vocational expert's hearing testimony, the ALJ found

jobs were available in the national economy for plaintiff as a hand packager, machine packager, or picker. *Id.* at 47. Considering plaintiff's age, education, job history, and residual functional capacity, the ALJ found plaintiff was capable of performing "work that exists in significant numbers in the national economy," and therefore found that plaintiff was "not disabled." *Id.*

## DISCUSSION

Plaintiff claims that both the ALJ and the Appeals Council erred in determining his eligibility for SSI. Pl.'s Mot. at 9-16. First, plaintiff argues that the ALJ committed legal error by failing to give specific reasons supported by substantial evidence for assigning great weight to a non-examining psychologist's opinion and only some weight to an examining psychologist's opinion. *Id.* at 9-12. Second, plaintiff argues that because the ALJ erroneously discounted the examining psychologist's assessment, the ALJ erred in determining plaintiff's RFC. *Id.* at 12-13. Third, plaintiff argues that the ALJ erred in evaluating the credibility of plaintiff and his mother because the ALJ failed to provide clear and convincing reasons for discrediting the testimony of each. *Id.* at 14-16. Finally, plaintiff argues that the Appeals Council erred in excluding from the record two additional medical evaluations that plaintiff submitted to the Appeals Council when he requested review. *Id.* at 16-19. Plaintiff argues that the proper remedy for these errors is remand for an immediate award of benefits or, in the alternative, for further proceedings. *Id.* at 19-20.

The Court will consider each of plaintiff's contentions in turn.

## I.    Medical Opinions

Courts distinguish among the opinions of three types of physicians: (1) treating physicians who have an established relationship with the claimant; (2) examining physicians who see the claimant, but do not treat her; and (3) non-examining physicians who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinion of a treating physician should be given greater weight than that of an examining or non-examining physician. *Id.* Likewise, an examining physician's opinion is usually entitled to more weight than that of a

physician who has not examined the claimant.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan*, 528 F.3d at 1198); *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).  "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn*, 495 F.3d at 633).  To satisfy the "substantial evidence" requirement, an ALJ must "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[e] his interpretation thereof, and mak[e] findings." *Orn*, 495 F.3d at 632.  Conclusory statements are insufficient.  *Id.*  An ALJ "must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Garrison*, 759 F.3d at 1012.

Here, the opinion of non-examining psychologist Dr. Klein conflicts with that of examining psychologist Dr. Arpaci.  Dr. Klein found plaintiff "not significantly limited" or "moderately limited" with respect to most work-related abilities, while Dr. Arpaci found plaintiff "moderately-to-severely limited" with respect to most work-related abilities.  AR at 88-90, 341.  For example, Dr. Klein found plaintiff's ability to work with others "moderately limited" and Dr. Arpaci found plaintiff's ability to interact appropriately with co-workers "severely limited." *Id.* at 89, 341.

Nevertheless, the ALJ assigned greater weight to Dr. Klein's opinion than to Dr. Arpaci's.  Referring to the non-examining physicians, including Dr. Klein, the ALJ stated: "To the extent that it is consistent with this decision, I give their opinion great weight because it is well supported by the record as a whole."[4] *Id.* at 46.  With respect to Dr. Arpaci's opinion, the ALJ stated:

---

[4] Dr. Fina and Dr. Klein were the non-examining physicians.  Dr. Fina examined plaintiff's medical records to determine plaintiff's physical ability for regular eight-hour workdays.  Dr. Klein, on the other hand, examined plaintiff's records to determine whether plaintiff had the psychological capacity for regular eight-hour work days.  Dr. Fina's assessment accords with the

United States District Court
Northern District of California

> To the extent that it is consistent with this decision, I give Dr. Arpaci's opinion some weight. But based upon the dearth of any mental health treatment and Dr. Arpaci's own examination findings, I find that the claimant retains the ability to perform simple tasks with low coworker contact and no public contact as opined by the DDS medical consultants.

*Id.*

By assigning "great weight" to Dr. Klein's opinion and only "some weight" to that of Dr. Arpaci, the ALJ favored the opinion of non-examining psychologist Dr. Klein over the conflicting opinion of examining psychologist Dr. Arpaci. In order to do this, the ALJ must provide specific and legitimate reasons. *See Garrison*, 759 F.3d at 1012; *see also Gibbs v. Astrue*, No. 12-0588-PLA, 2013 WL 140239, at *6 (C.D. Cal. Jan. 9, 2013) ("[T]he ALJ failed to explain how these psychiatrists' review of Dr. Payne's records and Dr. Bagner's opinions, without *themselves* conducting any examination of plaintiff, warrants the assignment of significantly greater weight to their opinions than to the opinions of Dr. Payne and Dr. Bagner . . . ."). Here, however, the ALJ did not explain how Dr. Klein's opinion, which the ALJ used in reaching the RFC determination, was "well supported by the record as a whole." *See* AR at 46. The ALJ cited no specific portions of the record as support for Dr. Klein's opinion. Rather, the ALJ simply recited the non-examining physicians' findings. *See id.*

The Commissioner argues that the ALJ properly evaluated the medical records and provided reasons for the weight given to Dr. Arpaci's testimony, namely that Dr. Arpaci's opinion was inconsistent with plaintiff's treatment history and with Dr. Arpaci's own findings. Def.'s Cross-Mot. at 3, 7 (citing AR at 46). Presumably this citation refers to the ALJ's statement that he assigned plaintiff's RFC based on "the dearth of any mental health treatment and Dr. Arpaci's own examination findings" because no other part of the ALJ's decision discusses why Dr. Arpaci's opinion was rejected. As the Commissioner argues, the ALJ may be suggesting that plaintiff's lack of mental health treatment in the record lessens the weight of Dr. Arpaci's opinion, which was based entirely on plaintiff's self-reported medical history. *See* AR at 336. But the ALJ does not state this. Nor does the ALJ specify what about Dr. Arpaci's "own examination findings"

---

assessment of examining physician Dr. McMillan. Accordingly, those two assessments are not at issue. The only conflict here concerns the differences between examining psychologist Dr. Arpaci's assessment and non-examining psychologist Dr. Klein's assessment.

gave the ALJ cause to question the weight of Dr. Arpaci's opinion.  *See id.* at 46.  These failures to explain constitute legal error because the record does not set forth the required "specific and legitimate reasons" for crediting Dr. Klein over Dr. Arpaci.  *See Garrison*, 759 F.3d at 1012.

Moreover, the ALJ appears to have based the weight given to each opinion "on the extent that [the medical opinion] is consistent with this decision."  *See* AR at 45-46.  Such circular logic goes against the instructions from the Ninth Circuit that an ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result."  *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984); *see also Holmlund v. Colvin*, No. 12-4481 EMC, 2014 WL 3965042, at *10 (N.D. Cal. Aug. 13, 2014) ("[A]n ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings.") (citations omitted).  To the extent that an ALJ discredits aspects or the entirety of an examining physician's medical opinion, the grounds for discrediting that opinion must be stated specifically and must be supported by substantial evidence.  *Orn*, 495 F.3d at 632.

In this case, the ALJ failed to state specifically why he was favoring the opinion of Dr. Klein over that of Dr. Arpaci, and the weight assigned to each is not supported by substantial evidence in the record.  Accordingly, the Court REVERSES the ALJ's decision regarding the weight of Dr. Arpaci's medical opinion.

## II.     Residual Functional Capacity

Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence.  Pl.'s Mot. at 13.  This argument is essentially duplicative of plaintiff's above challenge, as plaintiff argues that if the ALJ had given Dr. Arpaci's opinion the proper weight and accepted Dr. Arpaci's assessment of plaintiff's limitations, then the ALJ "would have been required to assign Plaintiff a more restrictive residual functional capacity (RFC)."  *Id.* at 12-13.

Residual functional capacity is the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."  20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00(c).  "Residual functional capacity is an administrative finding

United States District Court
Northern District of California

reserved to the Commissioner." *Lynch Guzman v. Astrue*, 365 F. App'x 869, 870 (9th Cir. 2010). A determination of RFC is "based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 416.945(a)(1). In making this determination, an ALJ cannot selectively focus on evidence that suggests non-disability without providing specific and legitimate reasons for rejecting evidence that suggests disability. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001).

Here, the ALJ found that plaintiff had the RFC to perform medium work, "limited to simple tasks with low coworker contact and no public contact." AR at 44. In so finding, the ALJ considered statements in the record from plaintiff and his mother, plaintiff's treatment history, and four medical opinions. *Id.* at 44-45. The ALJ credited the opinions of Drs. McMillan, Klein, and Fina, finding each was consistent with the record. *Id.* These opinions stated that plaintiff had "normal gait," "normal range of motion," and "normal muscle strength," as well as the ability to "understand, remember and sustain concentration." *Id.* Such evidence supports the ALJ's finding of a medium RFC in a workplace with limited co-worker interaction and no public contact.

However, as the Court found above, the ALJ failed to explain why he was favoring the opinion of a non-examining doctor over that of Dr. Arpaci. *See id.* at 46. The inconsistencies between Dr. Arpaci's opinion and the ALJ's findings are considerable, and the ALJ erred by failing to point to which parts of Dr. Arpaci's opinion he was not crediting and by not providing provide specific and legitimate reasons why. Specifically, Dr. Arpaci found plaintiff's ability to concentrate, to adapt to changes in workday routine, and to withstand routine workday stress were all moderately-to-severely impaired. *Id.* at 341. At the administrative hearing, the ALJ asked the vocational expert whether jobs existed in the national economy for an individual who could not consistently work an eight-hour day, who missed two or three days per month, who was 25 percent off task, or who had regular disputes with co-workers or supervisors. *Id.* at 61. For each hypothetical, the vocational expert opined that an individual with such a trait could not find work in the national economy. *Id.* at 61-62. Dr. Arpaci's finding of moderate-to-severe impairments suggests that plaintiff may be unable to maintain regular work attendance, maintain focus throughout the workday, or maintain professional relationships with co-workers or supervisors.

Thus, the ALJ erred by failing to provide specific and legitimate reasons for rejecting the portions of Dr. Arpaci's opinion that suggest plaintiff had a more restricted RFC. *See Heun v. Astrue*, No. 12-cv-2227 NC, 2013 WL 812420, at *7 (N.D. Cal. Mar. 5, 2013) (remanding for further determinations where the ALJ "failed to give clear and convincing reasons for discounting the medical evidence that supports a [more restrictive] residual functional capacity finding . . .").

Given that the Court has found reason to reverse the ALJ's finding as to the weight given to Dr. Arpaci's opinion, the Court likewise REVERSES the ALJ's decision as to plaintiff's RFC.

## III.   Credibility of Plaintiff's and Plaintiff's Mother's Statements

Plaintiff further argues that the ALJ erred in finding that statements by plaintiff and his mother in the record were not credible.  Pl.'s Mot. at 14.  Plaintiff argues that the ALJ failed to cite to clear and convincing reasons for the credibility findings and that "the ALJ erred by combining his determination of the Plaintiff's credibility with his determination of the Plaintiff's mother's credibility." *Id.* at 14-15.

An ALJ must engage in a two-step analysis to evaluate the credibility of a claimant regarding subjective symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  In the first step, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted).  "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).  "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

The ALJ "may find the claimant's allegations of severity to be not credible" but "must specifically make findings which support this conclusion." *Bunnell v. Sullivan*, 947 F.2d 341, 345

(9th Cir. 1991).  In other words, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."  *Smolen*, 80 F.3d at 1284. "These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain."  *Bunnell*, 947 F.2d at 345-46 (internal quotation marks and citation omitted).  The ALJ may consider inconsistencies between a claimant's testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]"  AR at 45.  Thus, the ALJ found that plaintiff met the first step of the credibility test.  *See Lingenfelter*, 504 F.3d at 1036.  The ALJ cited no evidence of malingering.  Moving to the second step, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." AR at 45.  In determining the plaintiff's RFC, the ALJ considered statements that plaintiff and his mother had made during the course of various assessments.  These included statements that plaintiff made "that he has blackouts, that his body shuts down, he has difficulty sleeping, [has] mood swings, and gets upset frequently."  AR at 44.  These also included statements by plaintiff's mother describing plaintiff's alleged physical impairments and limitations, limited social activities, ability to do chores and care for himself, and "violent outbursts."  *Id.* at 44-45.

The ALJ discredited plaintiff's and his mother's statements as "unsupported by the record, which contains very sparse evidence of treatment for his alleged disabling low back pain, hypertension and depression."  *Id.* at 45.  The ALJ went on to explain that "[t]he only evidence of treatment for his back pain is from July 2010 and January 2011."  *Id.*  The ALJ also noted that in October 2012 Dr. McMillan "diagnosed untreated hypertension and low back pain only."  *Id.*  As to plaintiff's and his mother's allegations of depression, the ALJ found, "There is no evidence of mental health treatment of any kind in the record . . . ."  *Id.*  The ALJ noted that in October 2012

16

Dr. Arpaci diagnosed a mood disorder, but ultimately concluded that he did "not find the allegations of the claimant or his mother credible because it is [sic] unsupported by the treatment records, objective findings and dearth of medical treatment for any of these conditions." *Id.* The ALJ did not specifically address why he discredited the allegations of hypertension.

Regarding plaintiff's low back pain, the Court finds that the ALJ's rejection of plaintiff's and his mother's statements is not supported by "specific, clear and convincing reasons." *See Lingenfelter*, 504 F.3d at 1036. In addition to the July 2010 and January 2011 treatment that the ALJ noted, the record reveals that plaintiff sought and received treatment for back pain in January 2012 and January 2013. *See* AR at 417, 425.[5] Following a car crash, plaintiff also sought treatment for back pain in January 2014. *Id.* at 492. Plaintiff further sought treatment for back pain in April, July, and August 2014. *Id.* at 371, 386, 396. Additionally, at the same time that the ALJ rejected plaintiff's statements as unsupported by objective evidence, the ALJ noted that Dr. McMillan diagnosed plaintiff as having low back pain. *See* AR at 45. Thus, the record does not support the ALJ's conclusion that plaintiff's and his mother's statements regarding his low back pain should be discredited for lack of objective evidence or evidence of treatment.

As to plaintiff's statements regarding hypertension, the ALJ did not point to any facts in the record to support why he was discrediting those statements. The record itself shows that plaintiff was consistently prescribed medication (Enalapril) for hypertension since at least July 2010. *See* AR at 319; *see also* AR at 251, 286, 291, 310, 318, 431. Further, plaintiff sought treatment for his high blood pressure in 2013 and throughout 2014. *See id.* at 386, 395, 408, 417. Dr. McMillan also diagnosed untreated hypertension in October 2012, as the ALJ noted. *Id.* at 45. The Court therefore finds that the ALJ did not offer "specific, clear and convincing reasons" for rejecting plaintiff's allegations of hypertension. *See Lingenfelter*, 504 F.3d at 1036.

As to plaintiff's and his mother's statements of disabling depression, however, the Court finds the ALJ did offer clear and convincing reasons to discredit these statements. Although the

---

[5] The Court notes that the ALJ did not have the benefit of these records before him during the administrative hearing, as explained further in Section IV below. Nevertheless, this Court must consider those records "when reviewing the Commissioner's final decision for substantial evidence." *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).

United States District Court
Northern District of California

1   record shows that plaintiff or his mother reported that he had suicidal thoughts or was depressed,

2   the ALJ noted that the record shows no evidence of treatment for this condition.  The records that

3   plaintiff later submitted to the Appeals Council also bear out this pattern, with plaintiff seeking

4   treatment for depression on only one occasion during a visit to Eastmont Wellness Center in

5   August 2014.  *See* AR at 376.  At that visit, plaintiff was referred to Sausal Creek for mental

6   health treatment, but nothing in the record shows that he followed up with this referral.  *See id.* at

7   375.  Nor does the record show that plaintiff ever received medication for his condition.  The

8   Ninth Circuit has "long held that, in assessing a claimant's credibility, the ALJ may properly rely

9   on 'unexplained or inadequately explained failure to seek treatment or follow a prescribed course

10  of treatment.'"  *Molina*, 674 F.3d at 1113 (holding that it was not error for an ALJ to discredit the

11  testimony of a claimant alleging panic disorder in part based on her failure to follow her provider's

12  advice to seek counseling) (citations omitted).  In his motion, plaintiff fails to point to evidence in

13  the record, beyond his own statements and those of his mother, that contradicts the ALJ's finding

14  that the record does not corroborate the allegations of depression.[6]

15          Further, the record contains no explanation as to why plaintiff did not seek treatment for

16  his depression.  "[A] claimant's failure to assert a good reason for not seeking treatment . . . can

17  cast doubt on the sincerity of the claimant's pain testimony."  *Molina*, 674 F.3d at 1113-14

18  (finding the ALJ properly discredited the claimant's testimony where the record contained no

19  evidence to show her failure to seek treatment was attributable to her mental illness).  Plaintiff

20  argues in his motion that he did not seek treatment because he could not afford it and because his

21  functional limitations, in particular his difficulty leaving the house and taking public

22  transportation, precluded it.  Pl.'s Mot. at 16.  However, plaintiff points to only one place in the

23  record to show that this was the reason for his failure to get treatment: his SSI application

24  summary, stating that he does not have a bank account and does not own any type of resource.

25

26          [6] Plaintiff asserts, without specific citation, that Dr. Arpaci's exam "demonstrates that
27  Plaintiff has a short attention span and has difficulty following instructions, which further
    substantiates his mother's observations."  Pl.'s Mot. at 15.  Even if this is so, this does not
28  contradict the ALJ's finding that plaintiff's allegation of disabling depression lacks any evidence
    of mental health treatment.  *See* AR at 45.

United States District Court
Northern District of California

*See id.* (citing AR at 209).  This stands in contrast to the case that plaintiff cites in his motion, in which the record showed that the claimant received treatment on thirty-two occasions, could not afford more treatment and could "rarely" afford prescription medication, and repeatedly "compensated for his inability to take prescription medication by overdosing on large quantities of over-the-counter pain medication."  *See Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296-97 (9th Cir. 1999).  In his reply brief, plaintiff offers a new reason why he did not seek mental health treatment, arguing that his evaluation by Dr. Arpaci "suggest[s] that his impairments could be responsible for his lack of treatment."  Docket No. 19, Reply at 3.  Again, this after-the-fact explanation offered in plaintiff's briefing has no clear support in the record.

The Commissioner argues that the reasons for not seeking treatment that plaintiff forwards in his motion are undermined by the fact that plaintiff sought treatment for other conditions during the time period in question.  Def.'s Cross-Mot. at 11-12.  The Court agrees.  The record, including the additional evidence that plaintiff submitted to the Appeals Council, shows that plaintiff was leaving the house and obtaining treatment for his hypertension and low back pain, as discussed above.  Plaintiff's reply brief argues that he was only leaving the house to seek emergency care "in the emergency room of a public hospital" and so this cannot be used as evidence that he had the ability to seek mental health treatment.  Reply at 4.  However, that assertion is belied by the existence of the Eastmont Wellness Center records, which plaintiff added to the administrative record and which show that plaintiff was receiving non-emergency treatment over a several year period.  *See generally* AR at 363-435.  "Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (citing *Russell v. Bowen,* 856 F.2d 81, 83 (9th Cir. 1988)).  Given that this Court's "role is not to second-guess that decision" where the ALJ has made specific findings supported by substantial evidence in the record, the Court will not find error in the ALJ's credibility determination regarding plaintiff's allegations of depression.  *See id.*

Finally, the Court does not find error in the ALJ's addressing collectively the statements by plaintiff and his mother.  *See, e.g.,* AR at 45 ("The claimant and his mother's allegations are unsupported by the record . . .").  When lay witnesses testify at a hearing, the ALJ cannot disregard such testimony without comment.  *Molina*, 674 F.3d at 1114.  The Ninth Circuit does

United States District Court
Northern District of California

"not, however, require[] the ALJ to discuss every witness's testimony on a[n] individualized, witness-by-witness basis." *Id.* Where the ALJ gives clear and convincing reasons for rejecting a claimant's testimony, and where the lay witness's testimony is similar to that of the claimant, "it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). Therefore, where plaintiff and his mother both provided statements regarding plaintiff's back problems and mental impairment, and where the ALJ discredited those statements for the same reasons, the ALJ did not err by addressing the statements on a collective basis rather than individually.

In sum, the Court finds that the ALJ erred in discrediting the statements by plaintiff and his mother regarding plaintiff's low back pain and the statements by plaintiff regarding his hypertension and accordingly REVERSES the ALJ's decision on these points. The Court will not overturn the ALJ's credibility findings regarding plaintiff's and his mother's statements of plaintiff's depression, as the ALJ supported those findings with clear and convincing reasons supported by substantial evidence in the record.

### IV.    Additional Evidence

Plaintiff also makes two arguments regarding evidence submitted to the Appeals Council. First, plaintiff argues that the Commissioner submitted an incomplete copy of the administrative transcript by excluding additional evidence that plaintiff submitted to the Appeals Council. Pl.'s Mot. at 16-17. Plaintiff attaches this evidence, which he asks the Court to consider, as Exhibits A and B to his motion. Exhibit A consists of a psychological report by licensed psychologist Lesleigh Franklin, Ph.D. Dr. Franklin interviewed plaintiff on July 24, 2015, and issued the report on September 30, 2015. *Id.*, Ex. A at 1. Exhibit B consists of treatment records from the Native American Health Center, dated July 15 to July 28, 2015, as well as test results ordered on August 3, 2015. *Id.*, Ex. B at 2-12.

Second, plaintiff argues that the Appeals Council should have remanded the case based on other evidence submitted to the Council after the ALJ's decision. Pl.'s Mot. at 18. These are medical records from: Eastmont Wellness Center (dated November 13, 2012, through August 13,

United States District Court
Northern District of California

2014), Highland Hospital (dated May 31, 2013, through February 27, 2015), and Sutter Medical Alta Bates Summit (dated January 31, 2014, through February 28, 2015). *Id.* These records are part of the administrative transcript. AR at 5, 363-526. Plaintiff argues that these records, in particular those from Eastmont Wellness Center, "are consistent with Dr. Arpaci's report and findings and would have warranted giving greater weight to her opinion." Pl.'s Mot. at 18-19.

### A.     Records the Appeals Council Rejected (Exhibits A and B)

As to the records that plaintiff has attached to his motion, the Court agrees with the Commissioner that defendant need not have included these in the administrative transcript. "The Commissioner's regulations permit claimants to submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, *so long as the evidence relates to the period on or before the ALJ's decision*." *Brewes*, 682 F.3d at 1162 (citing 20 C.F.R. § 404.970(b)) (emphasis added). Dr. Franklin's report is based on an interview conducted months after the ALJ's decision. Nevertheless, plaintiff argues that the report "relates to the period on or before the February 26, 2015 ALJ denial because it documents an assessment and evaluation of the same mental conditions considered by the ALJ." Pl.'s Mot. at 17.

Plaintiff cites for support to *Brewes* and *Taylor v. Commissioner of Social Security Administration*, 659 F.3d 1228 (9th Cir. 2011). *Id.* Neither case, however, stands for the proposition that records that post-date an ALJ decision must become part of the administrative record if they involve the same conditions that the ALJ considered. In *Taylor*, the Ninth Circuit found that the Appeals Council had improperly failed to consider an evaluation and medical source statement that post-dated the ALJ's decision. The doctor who created these records, however, had examined the claimant twice during a five-year period prior to the expiration of his insured status, had supervised the nurse practitioner who treated the claimant, and had approved the prescription of the claimant's medications. *Taylor*, 659 F.3d at 1232. The Commissioner in that case did not dispute that the doctor's opinion concerned the claimant's impairments and limitations during the period before his insured status expired. *Id.* Moreover, the Appeals Council

1      in that case denied review without addressing the doctor's opinion at all.   *Id.* at 1232-33

2      ("Somewhere in the shuffle, Dr. Thompson's psychiatric evaluation and medical source statement

3      were lost, and the Appeals Council never considered them when it denied Taylor's request for

4      review.").

5             Here, plaintiff makes no argument that Dr. Franklin treated or evaluated plaintiff prior to

6      the February 2015 ALJ decision date.  Dr. Franklin's evaluation at Exhibit A does not indicate that

7      she had any contact with plaintiff until the July 2015 interview.  *See* Pl.'s Mot., Ex. A.  Further,

8      the Appeals Council considered and rejected Dr. Franklin's evaluation as outside of the relevant

9      time period, because it post-dated the ALJ's decision.  AR at 2.  In his motion, plaintiff does not

10     specifically address why Exhibit B, records from the Native American Health Center, should be

11     part of the administrative record.  However, those records similarly show no contact with plaintiff

12     prior to the ALJ's decision.  *See* Pl.'s Mot., Ex. B (showing office visit on July 15, 2015; nurse

13     visit on July 28, 2015; testing results on August 3, 2015).  Thus, *Taylor* is inapplicable here.

14            *Brewes*, moreover, involved later submitted evidence that the Appeals Council "made part

15     of the record."  682 F.3d at 1161.  Plaintiff slightly mischaracterizes this by implying that *Brewes*

16     "held that new evidence *submitted* to the Appeals Council[,]" whether or not the Council accepts

17     that evidence, "becomes part of the administrative record."  *See* Pl.'s Mot. at 16-17 (emphasis

18     added).  *Brewes*, however, is not instructive as to whether the Court should consider records

19     submitted to the Appeals Council but that the Council expressly rejected as falling outside the

20     relevant time period.  Given that Exhibits A and B do not involve any evaluations, treatment, or

21     other contact with plaintiff during the period prior to the ALJ's February 2015 decision, the Court

22     will not find that the Appeals Council improperly rejected this evidence or that the Commissioner

23     erred in not including it with the administrative record.  The Court does not consider these

24     documents in determining whether the ALJ's decision was supported by substantial evidence.

25

26            **B.     Records the Appeals Council Made Part of the Record (Administrative
              Record at 363-526)**

27            The Appeals Council did, however, make other records submitted after the ALJ's decision

28     a part of the administrative record.  AR at 5.  These are the records from Eastmont Wellness

Center, Highland Hospital, and Sutter Medical Alta Bates Summit.  *Id.* at 6.

Plaintiff does not seek remand under sentence six of 42 U.S.C. § 405(g) for the ALJ to consider this new evidence.  Rather, plaintiff appears to be asking this Court to review the Appeals Council's decision to deny review.  *See* Pl.'s Mot. at 18 ("In addition, the Appeals Council should have remanded the case based on evidence submitted after the ALJ's decision and included in the record, particularly the records from Eastmont Wellness Center").  This Court "do[es] not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action."  *See Brewes*, 682 F.3d at 1161 (citing *Taylor*, 659 F.3d at 1231).  Nevertheless, "when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."  *Id.* at 1163 (citing *Tackett*, 180 F.3d at 1097-98).  For that reason, although the Court will not take up plaintiff's question regarding whether it was proper for the Appeals Council to deny review, the Court will consider the newly submitted evidence that the Council made part of the administrative record "to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence."  *See id.* (citations omitted).  The Court has incorporated its review of the newly submitted records from Eastmont Wellness Center, Highland Hospital, and Sutter Medical where appropriate into its analysis above.

## V.      Remedy upon Remand

The remaining question is whether to remand for further administrative proceedings or for the immediate payment of benefits under the credit-as-true doctrine.  The Ninth Circuit has reaffirmed the validity of the doctrine.  *See Garrison*, 759 F.3d at 999 (describing the credit-as-true doctrine as "settled").  Under the doctrine, a court has the discretion to remand for payment of benefits where (1) the record has been fully developed, and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide sufficient reasons for rejecting the medical or subjective evidence; and (3) the ALJ would be required to find the claimant

disabled on remand if the improperly rejected evidence were credited as true.  *Id.* at 1020.  Even where each of these conditions is met, the court retains the discretion to remand for further proceedings "when the record as a whole creates serious doubt over whether the claimant is, in fact, disabled[.]"  *Id.* at 1021.

Here, the Court finds that the record as a whole continues to raise doubt over whether plaintiff is disabled.  *See Burrell v. Colvin*, 775 F.3d 1133, 1141-42 (9th Cir. 2014).  As Dr. Arpaci's evaluation states, her prognosis is "guarded" due to the lack of medical records.  AR at 340.  Furthermore, as explained above, the Court does not find error in the ALJ's discrediting plaintiff's and his mother's statements as to depression.  Dr. McMillan diagnosed plaintiff with untreated hypertension and low back pain, yet found that plaintiff could perform work at the medium level.[7]  *Id.* at 334-35.  Thus, even crediting the statements regarding hypertension and back pain as true, the record still contains evidence that such a finding may not be inconsistent with an RFC for medium work.  The Court is somewhat hamstrung in this case, as was the ALJ, by the lack of testimony due to plaintiff's failure to appear at his administrative hearing.  Such testimony may have explained why the record is thin regarding plaintiff's treatment for his mental health impairment.  However, the Ninth Circuit has been unequivocal that courts should "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record."  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (citing 42 U.S.C. § 405(g); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  Accordingly, the Court finds it necessary to remand plaintiff's claim for further proceedings.

On remand, the ALJ should reevaluate the RFC finding in light of the Court's reversal regarding Dr. Arpaci's opinion and the credibility of plaintiff's and plaintiff's mother's statements regarding hypertension and low back pain.  From there, the ALJ should reevaluate step five of the disability inquiry, in light of any change in the RFC finding.  In so doing, the ALJ shall consider the additional evidence that plaintiff submitted to the Appeals Council and that the Appeals

---

[7] Specifically, Dr. McMillan found plaintiff capable of occasionally lifting and carrying 50 pounds and frequently lifting and carrying 25 pounds.  This is consistent with the definition of "medium work" in the Social Security regulations.  *See* 20 C.F.R. § 416.967(c).

United States District Court
Northern District of California

Council made part of the administrative record in this case.

## CONCLUSION

For the foregoing reasons, the Court REVERSES the Commissioner's decision to deny benefits and REMANDS this case pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

**IT IS SO ORDERED**.

Dated:  March 15, 2017

_____

SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California